IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| ENRIQUE MARTINEZ, : | |
| : | |
| Petitioner, : | |
| : | |
| : | |
| VS. : | **28 U.S.C. § 2255 Case No.** |
| : | 7 : 10-CV-90077 (HL) |
| : | |
| UNITED STATES OF AMERICA, : | **Criminal Case No.** |
| : | 7 : 09-CR-02 (HL) |
| : | |
| : | |
| Respondent. : | |

# RECOMMENDATION

Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255, filed on April 14, 2010, is before this Court for the issuance of a recommendation of disposition pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

**Procedural History**

The Petitioner was indicted in this Court on February 19, 2009, on charges of two violations of federal firearms laws. Count One of the indictment alleged a violation of 26 U.S.C. § 5861(d), Possession of an Unregistered Firearm, and Count Two alleged a violation of 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Convicted Felon. (Doc. 1). On February 26, 2009, the Petitioner entered into a Plea Agreement with the Government and pled guilty to Count One of the Indictment as cited above, while Count Two was dismissed. (Docs. 5, 6). Petitioner was sentenced to a term of imprisonment of 100 months on June 16, 2009. (Docs. 12, 15). Petitioner

filed a Notice of Appeal on July 20, 2009, resulting in the Eleventh Circuit affirming Petitioner's conviction and sentence and granting counsel's *Anders* motion on February 26, 2010, based on a finding that "independent examination of the entire record reveals no arguable issues of merit". (Doc. 27).

In his § 2255 motion, Petitioner alleges that he received ineffective assistance of counsel at the plea stage of his criminal proceedings by counsel failing to request or use an interpreter, by failing to inform the Petitioner of the minimum sentence he faced and falsely promising the Petitioner that he would only receive a 37 month sentence if he pled guilty. Petitioner asserts that he was induced to plead guilty by his attorney's false promises regarding the potential length of his sentence, and that he would not have entered a guilty plea absent these promises. (Doc. 29). Petitioner maintains that counsel did not advise him of the possible minimum sentence that might be imposed, that counsel promised Petitioner that "if I did plead guilty there would be no further prosecution and that my sentence for any crime arising out of this alleged unregistered firearm would be suspended", and that Petitioner's "native and only language is spanish [sic]. He cannot write, read, speak, or understand english [sic] that well." (Doc. 29, ¶¶ 3, 8, 10). Petitioner alleges that his inability to speak and understand English, the promise of counsel that Petitioner would receive only a 37 month sentence, and counsel's failure to inform Petitioner of the possible minimum sentence rendered his guilty plea involuntary and unknowing.

The Court appointed counsel to represent Petitioner on the § 2255 motion and held an evidentiary hearing on the motion on November 16, 2010. Following the preparation of a transcript of the evidentiary hearing proceedings, both parties have filed briefs in support of their positions.

**Legal Standards**

Section 2255 provides that:

> a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. If a prisoner's 2255 claim is found to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

In order to establish that his counsel's representation was constitutionally defective, the Petitioner must show (1) that his counsel's representation was deficient, and (2) that the Petitioner was prejudiced by his counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Smith v. Wainwright*, 777 F.2d 609, 615 (11th Cir. 1985).

"Our role in collaterally reviewing [] judicial proceedings is not to point out counsel's errors, but only to determine whether counsel's performance in a given proceeding was so beneath prevailing professional norms that the attorney was not performing as 'counsel' guaranteed by the sixth amendment." *Bertolotti v. Dugger*, 883 F.2d 1503, 1510 (11th Cir. 1989). The two-prong *Strickland* test applies to guilty plea challenges, although "[i]n the context of a guilty plea, the first prong of *Strickland* requires petitioner to show his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in

criminal cases, while the second prong requires petitioner to show a reasonable probability that, but for counsel's errors, he would have entered a different plea." *Woolsey v. United States*, 2011 WL 195412, *2 (M.D.Fla.)(citing *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985)). Thus, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59.

The *Strickland* court stated that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

"As to counsel's performance, 'the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices.'" *Reed v. Sec'y. Fla. Dep't. of Corr.*, 593 F.3d 1217, 1240 (11th Cir. 2010)(quoting *Bobby v.Van Hook*, 130 S.Ct. 13, 17 (2009)). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In order to find that counsel's performance was objectively unreasonable, the performance must be such that no competent counsel would have taken the action at issue. *Hall v. Thomas*, 611 F.3d 1259, 1290 (11th Cir. 2010).

As observed by the Eleventh Circuit, the standard for ineffective assistance of counsel

> has nothing to do with what the best lawyers would have done. Nor is it the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in

> the circumstances, as defense counsel acted at trial. Courts also
> should at the start presume effectiveness and should always avoid
> second guessing with the benefit of hindsight. *Strickland* encourages
> reviewing courts to allow lawyers broad discretion to represent their
> clients by pursuing their own strategy. We are not interested in
> grading lawyers' performances; we are interested in whether the
> adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).

In regard to a guilty plea, the Constitution requires "that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *U.S. v. Ruiz*, 536 U.S. 622, 629 (2022) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). A court accepting a guilty plea must ensure that a defendant "enters his guilty plea free from coercion, understands the nature of the charges, and understands the consequences of his plea." *U.S. v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005)(internal enumeration omitted). The Supreme Court has determined that "the representations of the defendant [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

## Hearing Testimony

*Petitioner's Guilty Plea Hearing*

The Petitioner appeared before the Honorable Hugh Lawson, U.S. District Judge, on February 26, 2009 to enter a guilty plea to the charge of Possession of an Unregistered Firearm. (Doc. 23). This proceeding was conducted entirely in the English language. *Id.* The Court placed

5

the Petitioner under oath and proceeded to inform the Petitioner as to the charge to which the Petitioner was pleading guilty, the maximum term of imprisonment and maximum possible fine associated with this charge, as follows:

> THE COURT: (After setting out the charge) Do you understand that charge?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: This charge is a felony and carries a range of what?
>
> MR. SOLIS: A maximum term of imprisonment of 10 years, a possible maximum fine of $250,000, or both, three years of supervised release, plus a $100 mandatory assessment.
>
> THE COURT: Do you understand, Mr. Martinez, the range of penalty that is applicable in this case?
>
> THE DEFENDANT: Yes, sir.

*Id.* at pp. 3, 4. The Petitioner stated that he understood both the charge and the possible penalty therefore. *Id.*

The Court then asked the Petitioner and his counsel a series of questions regarding counsel's representation and whether Petitioner and counsel had discussed the Petitioner's constitutional rights, the charges, possible penalties, and defenses. *Id.* at pp. 4-5. Petitioner responded that he understood the range of penalty applicable to the case and that his counsel, Mr. Francisco, had discussed the facts, range of penalty and possible defenses with Petitioner. *Id.* at p. 4.

> THE COURT: You are represented by Attorney John Francisco; are you not?
>
> THE DEFENDANT: Yes, sir.

THE COURT: Have you had sufficient time to talk with Mr. Francisco and to consult with him about the case?

THE DEFENDANT: Yes, sir.

THE COURT: Has he done for you as your lawyer all that you want him to do?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with his services?

THE DEFENDANT: Yes, I am.

*Id.* at p. 4, ll. 7-17.

Petitioner was informed as to his rights to a jury trial and was questioned regarding his understanding of the plea process in general. *Id.* at pp. 5-10. The Petitioner stated that he was pleading guilty freely and voluntarily, with no one having threatened or attempted to force him to plead guilty. *Id.* at p. 7, ll. 19-25. The Court specifically addressed the Petitioner's ability to understand the proceedings and to read and write as follows:

THE COURT: Do you understand where we are and what we're doing?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about what we're doing?

THE DEFENDANT: No, sir.

THE COURT: Can you read and write?

THE DEFENDANT: No, sir, I can't.

THE COURT: You're totally illiterate?

THE DEFENDANT: I can read a little, but just --

THE COURT: Okay.

7

*Id.* at p. 9, ll. 2-12.

The Government read the Stipulation of Fact in the Petitioner's Plea Agreement, and the Petitioner affirmed that he understood the stipulation, agreed with the stipulation and admitted that it was true, truly describing what took place and his conduct in this case. *Id.* at p. 11, ll. 18-25, p. 12, ll. 1-5. Mr. Francisco affirmed for the Court that the Plea Agreement was in fact the agreement reviewed by the Petitioner and counsel and that Petitioner had initialed each page of the agreement.

> THE COURT: Mr. Solis, would you exhibit the plea agreement
> please to Mr. Martinez. Mr. Martinez, you've told me that you are
> illiterate and I therefore assume that you cannot read that document
> and you may not even be able to recognize it so I will engage the
> assistance of Mr. Francisco. Mr. Francisco, is that the plea
> agreement of your client?
>
> MR. FRANCISCO: This is the plea agreement that my client and I
> have gone over. I've read every line to him. We have discussed the
> entire amount. He has initialed after my initialing it on each page,
> and in my presence he has signed on the back page, and this happens
> to be the plea agreement that Mr. Solis presented to us now.

*Id.* at p.12, ll. 6-17.

The Court specifically informed the Petitioner that the Plea Agreement:

> is an agreement between yourself and the United States Attorney. It
> is not an agreement between you and me, nor is it an agreement
> between you and any other judge of this court, none of whom are

8

bound by the plea agreement. Do you understand that?

        THE DEFENDANT: Yes, sir.

*Id.* at p. 13, ll. 22-25, p. 14, ll. 1 - 2.

In regard to sentencing, the Court specifically advised the Petitioner that:

        THE COURT: I want you to understand that you cannot rely on any estimate made by anyone at this time as to what your sentence may be and that you should not enter a plea of guilty in reliance on any such estimate. . . . Do you understand that?

        THE DEFENDANT: Yes, sir.

*Id.* at pp. 15, ll. 22-25, p. 16, ll. 7-8.

The Court ultimately accepted the Petitioner's guilty plea, finding that there was a factual basis for the guilty plea, that the Petitioner was guilty, and that the plea was freely and voluntarily entered. *Id.* at p. 16.

*Sentencing Hearing*

On June 16, 2009, the Petitioner appeared before the Honorable Hugh Lawson for sentencing, and when asked if there was anything else he wished to say, the Petitioner responded as follows:

> Yes, sir. The only thing I want to bring up, Your Honor, I didn't go inside the house to rob anything, sir. I found – the guns was put in my land. I did sell them, sir. I'm guilty of that. But I didn't steal the guns. I didn't went inside the property to stole anything, and they gave me two points enhancement for that.

(Doc. 24, p. 3, ll. 19-24.)

The Court heard further argument from counsel regarding the two point enhancement issue, and then adjudicated the Petitioner guilty of Count One. *Id.* at p. 5. The Court sentenced the

9

Petitioner to a term of imprisonment of 100 months, followed by a three year period of supervised release. *Id.* at p. 6. When asked if he understood the sentence as imposed by the Court, the Petitioner responded, "Yes, sir." *Id.* at p. 7, l. 11.

*Evidentiary Hearing*

On November 16, 2010, an evidentiary hearing was held before the undersigned in Albany, Georgia. (Doc. 40). At the request of the Petitioner's appointed counsel, a Spanish interpreter was present at the hearing, as to whose qualifications both counsel for Petitioner and the Government stipulated. (Doc. 40, p. 3, ll. 11-14, p. 4, ll. 6-9). The undersigned made no determination as to the need for an interpreter. *Id.* at p. 3, ll. 11-14. The interpreter translated the proceedings for the Petitioner, and the Petitioner testified through the interpreter.

Petitioner's brother, Sergio Martinez, testified on behalf of the Petitioner. *Id.* at pp. 6-26. Sergio Martinez testified that he and the Petitioner were raised with Spanish as the primary language spoken in the home, and that he conversed with the Petitioner primarily in Spanish. *Id.* at p. 7, ll. 15-20. Sergio Martinez testified that the Petitioner does speak English, but is more fluent in Spanish, that the Petitioner reads and writes on a first or second grade level, and that Petitioner's education was primarily in Spanish, although the brothers attended schools in the United States. *Id.* at pp. 7-9. On cross-examination, Sergio Martinez testified that the Petitioner would ask a question if he did not understand a portion of a conversation or dialogue. *Id.* at pp. 19, 20. Sergio Martinez further testified that Petitioner's guilty plea counsel, John Francisco, told Sergio that the Petitioner's sentence would be "37 months. And he says, but according to his PSI, I have already seen it, and that the most he could get will be within 42 to 48 months." *Id.* at pp. 22, ll. 24-25, p. 23, l.1.

Petitioner testified on his own behalf and stated that he spoke both English and Spanish, but

that Spanish was his first language. *Id.* at pp. 26-61. When asked how well he spoke English, Petitioner responded "Very basic. Big issues or big words, I don't know them that well." *Id.* at p. 27, ll. 14, 15. Petitioner communicated with his attorney, John Francisco, in English and never thought to ask for an interpreter. *Id.* at p. 29, ll. 1-4. Petitioner testified to understanding most of his plea hearing, "but big – big things or legal things, no." *Id.* at p. 38, ll. 19, 20.

As to the plea agreement, Petitioner testified to being unable to read or write, that he did not read the actual agreement that he signed, and that his attorney only read portions of the document to the Petitioner. *Id.* at p. 34, ll. 1-4. Petitioner "thought [his sentence] was going to be 37 months . . . He never knew anything about a maximum penalty. He can't rem — recall hearing anything about that." *Id.* at p. 34, ll. 12-17. Petitioner did remember and testify to entering a guilty plea in this Court in 2002 in another case, at which proceeding, conducted in English, no interpreter was used. *Id.* at p. 57, ll. 7-12.

John Francisco, counsel for the Petitioner prior to and during his plea proceedings, testified on behalf of the Government. *Id.* at pp. 64-90. Mr. Francisco stated that he has been a member of the State bar since June 1981 and has handled more than 200 criminal matters in federal district court. *Id.* at pp. 64-65. In 2008 Mr. Francisco was appointed to represent the Petitioner in the underlying case involving alleged violations of his Supervised Release as well as gun charges. *Id.* at pp. 67-68. Mr. Francisco met with the Petitioner three or four times prior to sentencing, informed the Petitioner of the charges against him, reviewed the evidence against Petitioner and the maximum sentence he faced. *Id.* Mr. Francisco knew that the Petitioner could not read or write well, and that if letters needed to be written, the Petitioner would have other individuals write the letters, but Mr. Francisco testified that "he [Petitioner] can speak English. There's no doubt that this gentleman spoke English and can speak English, and if he wants to speak it today, he can

11

speak it today." *Id.* at p. 69, ll. 17-21.

As to the Petitioner's Plea Agreement, Mr. Francisco testified that the deal "was that the supervised release would go away, that petition would be ended, so he would not suffer any penalty for violating the terms of his supervised release. I forget whether it was count one or count two, but I think it's the 922 count was going to be dismissed, and he'd plead guilty to the other count." *Id.* at p. 72, ll. 4-10. Mr. Francisco denied ever telling the Petitioner that he would be sentenced only to 37 months, and testified to explaining the Federal Sentencing Guidelines to the Petitioner in detail as to the sentencing range he might expect. *Id.* at p. 73, ll. 11-16. Mr. Francisco testified that he made a "guesstimate" of the Petitioner's Sentencing Guidelines range. *Id.* at p. 85. Mr. Francisco further testified to reading and explaining the written Plea Agreement to the Petitioner paragraph by paragraph, asking if Petitioner understood as he explained. *Id.* at p. 75, ll. 15-17, p. 76, ll. 22-25, p. 77, ll. 1-9. Mr. Francisco "explained to Mr. Martinez that this is not the state system and you can't make a plea agreement in this court that is for a specific sentence. I emphasized that more than once." *Id.* at p. 79, ll. 3-6. Mr. Francisco concluded that, "[Petitioner] did not have any question about what I was saying in English. He really didn't." *Id.* at p. 84, ll. 11-12.

Probation Officer Debra McLeod testified on behalf of the Government, and stated that she supervised the Petitioner while he was out on Supervised Release following his 2002 guilty plea. *Id.* at pp. 91-97. Ms. McLeod testified to communicating with the Petitioner on several occasions, always in English and with Petitioner having no apparent difficulties in understanding or communicating in English. *Id.* at p. 94.

Georgia Bureau of Investigation agent Stripling Luke testified on behalf of the Government. *Id.* at pp. 98-110. Agent Luke investigated the firearms case against the Petitioner, and testified

that all conversations between the Petitioner and a cooperating witness were conducted in English. *Id.* at pp. 99, 100. Agent Luke participated in the December 2008 arrest of Petitioner, and testified that he conducted the post-arrest interview of Petitioner entirely in English, with no need for an interpreter. Agent Luke further testified that the Petitioner told him that he could speak English, so an interpreter was not used and did not become necessary. *Id.* at p. 106.

## Discussion

*Use of an interpreter*

Petitioner asserts that his counsel's failure to have an interpreter utilized during his plea proceedings amounted to ineffective assistance of counsel and resulted in the entry of an unknowing and involuntary guilty plea. The Court Interpreters Act provides that a district court shall utilize an interpreter:

> if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case), or a witness who may present testimony in such judicial proceedings . . . speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.

28 U.S.C. § 1827(d)(1).

"In addition, several circuits have held that a defendant whose fluency in English is so impaired that it interferes with his right to confrontation or his capacity, as a witness, to understand or respond to questions has a constitutional right to an interpreter." *U.S. v. Lin*, 794 F.2d 469, 470 (9th Cir. 1986).

The evidence before the Court does not establish that the Petitioner's ability to understand

the proceedings or to communicate with counsel and the Court, or to comprehend questions or present testimony was impaired or inhibited. The evidence before the Court thus establishes that counsel Francisco acted reasonably in not requesting a Spanish interpreter and that the lack of an interpreter at the plea proceedings did not result in the entry of an unknowing or involuntary guilty plea. The plea colloquy demonstrates that the Petitioner understood and communicated with the Court in English and that the Court conducted a thorough plea colloquy to ensure that the Petitioner's plea was knowing and voluntary. The Court specifically addressed the Petitioner's illiteracy, and the Petitioner stated that he could read "a little", but affirmed that his counsel had read the plea agreement to him and he understood the agreement, as well as the charges, possible penalties and his constitutional rights. (Doc. 23, p. 9, ll. 8-11, p. 12, ll. 12-25, p. 13, ll. 1-12). As the Respondent points out, the Petitioner previously entered a guilty plea in this Court in Case No. 5 : 01-CR-53, also before U.S. District Judge Hugh Lawson, wherein Petitioner appeared without an interpreter. Also, the testimony at the § 2255 hearing was that Petitioner communicated with his probation officer and law enforcement officers entirely in English.

      The sentencing hearing testimony establishes Petitioner's ability to speak and understand English, as Petitioner spoke extensively to the Court in English and exhibited an understanding of the Sentencing Guidelines system and enhancements involved therein.

      Finally, the evidentiary hearing testimony establishes that the Petitioner speaks and understands English, although Spanish was his first language, that he conversed with his Probation Officer and law enforcement agents in English, and that he conversed with his attorney in English. None of the witnesses testifying at the evidentiary hearing provided evidence that the Petitioner is unable to speak and understand English, or was unable to speak and understand English at the time he entered his guilty plea herein. Although Petitioner's brother, Sergio Martinez, testified that the

Petitioner has trouble understanding "big words", he confirmed that the Petitioner would ask for an explanation of anything he did not understand. The plea hearing transcript reveals no evidence of Petitioner needing or asking for additional clarification of any part of the plea process.

The Petitioner has failed to establish that counsel's representation, in failing to use or request an interpreter, fell below an objective standard of reasonableness or that such action resulted in prejudice to the Petitioner's entry of a guilty plea. Counsel Francisco acted reasonably in not requesting a Spanish interpreter, inasmuch as all of his conversations with the Petitioner had been conducted in English, he had no indication that the Petitioner failed to understand their conversations and Petitioner at no time asked for an interpreter or exhibited a failure to understand the proceedings, beyond a lower level of ability in general reading and writing skills. *See United States v. Cabrales-Peralta*, 2009 WL 1116330 (E.D.Ky.) (Counsel acted reasonably in not requesting a Spanish translator, as all of his conversations with defendant took place in English, attorney and defendant read all documents in English, and defendant never indicated that he did not understand English); *Bautista v. United States*, 2008 WL 616098 (M.D.Fla.) (counsel was not ineffective in failing to employ a Spanish interpreter, as there was no indication in the record that the defendant ever told his attorney that he could not understand him or that defendant ever requested an interpreter).

*Sentencing*

Petitioner also claims that his counsel rendered ineffective assistance in failing to advise Petitioner of his possible minimum sentence and promising Petitioner that he would only be sentenced to 37 months under the plea agreement. However, the evidence before the Court fails to establish that the advice provided by counsel to the Petitioner regarding sentencing fell outside "the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397

15

U.S. 759, 770 (1970).

The plea colloquy establishes that the Court explained and the Petitioner understood the range of penalty he faced and the fact that only the Court would determine the sentence, apart from any agreement with the Government or discussions with Petitioner's attorney. Moreover, the Court verified with the Petitioner that his counsel had reviewed the charges and possible sentence with the Petitioner prior to the entry of his guilty plea. Petitioner's contention that he was coerced into pleading guilty "is belied by the provisions of the plea agreement and Petitioner's statements during the plea colloquy that he voluntarily pled guilty". *Edwards v. United States*, 2011 WL 1357687, at *5 (M.D.Fla.). The record also reflects that Judge Lawson expressly cautioned the Petitioner that his sentence could be higher than that discussed with his attorney or anyone else, and the Petitioner was expressly advised of the maximum penalty he faced. "Armed with this information, [the Petitioner] freely chose to plead guilty. Having done so, he has presented no basis for now claiming that his plea was not voluntary." *Bradley v. United States*, 2011 WL 772919 at * 6 (S.D. Ala.).

Petitioner's testimony at his sentencing hearing demonstrates his understanding of the sentence imposed. Additionally, counsel John Francisco's testimony at the evidentiary hearing before the undersigned establishes that he informed the Petitioner of a possible sentencing range, based on his own calculations, but that he informed the Petitioner this was not the final decision as to sentencing and that the final decision would be made by the Court. Attorney Francisco expressly denied ever informing the Petitioner that his sentence would be only 37 months or that his calculations were anything more than a guess, but instead, offered testimony that he informed Petitioner the final sentence would be determined solely by the Court. (Doc. 40, p. 77, ll. 9-14).

Petitioner's testimony at the evidentiary hearing presents nothing to challenge or overcome

the Petitioner's statements at his plea hearing or the testimony of attorney Francisco.

"The Court strongly presumes that a defendant's statements at the guilty-plea colloquy were truthful, including his admission of guilt and his representation that he understood the consequences of his plea." *Woolsey*, at *7 (citing *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. The Petitioner's statements at the guilty plea proceeding evidence Petitioner's understanding that only the Court would decide his sentence and Petitioner's statements at his sentencing hearing evidence his understanding of the sentence itself. The Petitioner has failed to establish that counsel provided ineffective assistance in regard to the advice he provided to Petitioner regarding his possible sentence.

## Conclusion

The Petitioner has failed to show that his attorney's performance was deficient, or that Petitioner was prejudiced by his attorney's performance, such that there was a reasonable probability that but for counsel's errors, Petitioner would not have pled guilty. WHEREFORE, it is recommended that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this Recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, it is recommended that the Court deny a certificate of appealability in its Final Order. If the

Petitioner files an objection to this Recommendation, he may include therein any arguments he wishes to make regarding a certificate of appealability.

**SO RECOMMENDED**, this 6th day of May, 2011.

          s/   **THOMAS Q. LANGSTAFF**

          UNITED STATES MAGISTRATE JUDGE

asb